Judge Robertson
delivered the opinion of the Qpurt.
Jacob Robinson owned a horse known by the name of “OLD JOLLY.” Enos Daniel pro», posed to buy him, and offered $# ^ Robinson asked $#50 cents. Daniel agreed to give that sum. During the negotiation, Daniel having made some enquiry about “Jolly’s” age, Robinson replied that he did not know how old. he was, but that he was very old. After Daniel bad agreed to buy him, he stated that he owed Kennet, (the plaintiff,) who wanted a work horse, and that he would bring Kennet to see the horse, and would pay Robinson for him if Kennet would buy him from him, (Daniel,) and credit him Tyith $#50 cents.
Accordingly, Kennet was brought, and examined the horse, Robinson told him that he did not know the age of the horse, but did not suppose that he was more than twelve or fourteen years old, Kennet then bought him of Daniel, whom he credited with $#■ 50 cents.
Not long afterwards, Kennet being dissatisfied with “Jolly,” sent to Robinson’s, with a request to take him back, but with instructions to his agent to turn him out in Robinson’s lot, if he refused to receive him. The agent met with Robinson on the way, who told him when he ascertained his business, that he had not sold the horse to Kennet, but to Daniel, and that he would not take him back. The agent persisting in a determination to execute his commission, Robinson requested him. t° inform Kennet that, if he turned the horse out in his enclosure, he would post him as an estray, and keep him until payment of the fees for posting and keeping.
Countsin {re-ver and for ¡¡aieo/a 6 horse, improperly joined,
Jolly was turned loose in the lot of Robinson, who “sent word” to Kennet that he desired that he would “come andget his horse .” Not long afterwards, son posted ‘‘Jolly,” as an estray. Kennet frequently disavowed any title or claim to him; and Robinson stated to some of his neighbors that Kennet should hot have his horse, unless he would pay “the fees Robinson treated him as Rennet’s horse; but occasionally used him, and permitted others to use him. There is no evidence, however, that “he was abused.” Without ever making any demand, or communicating to Robinson in any way, a willingness that Jolly should be returned to him, Kennet sued Robinson. His declaration contains three counts: the first for trover, the other two for fraud.
There was no proof of fraud; and the foregoittg facts constitute the substance of the evidence on the trial, as reported to us, by a bill of exceptions.
On the general issue, the jury found a verdict for the defendant. The court overruled a motion for a new trial; to reverse which judgment, this writ of error is prosecuted by Kennet.
It may be seriously doubted, whether trover,for the conversion and fraud, in the sale of Jolly, ccfúld be joined in the same declaration. The counts for fraud in the sale, suppose Jolly still to belong to Ken-net, and he would be entitled to him if he hadrecov-ered a judgment specially, on these counts for damages. A recovery on the count for trover, would have vested the horse in Robinson, by operation of laipr, “solutio pretii, empiionis loco habetur.” We should be inclined to the opinion, therefore, that a general verdict would have been vexatious. And that, therefore, there is a misjoinder. However, this is not material. Nor is it necessary to decide whether, as Kennet bought the horse from Daniel, he could maintain any action for fraud, in his own name, against Robinson,
We must sustain the judgment of the circuit court on another ground. There is no proof of a conversion; no demand by Kennet, or refusal by Robinson, to surrender Jolly, is proved. The testimony negatives a demand. There is no evidence that Rpbinsop *86 ever told Kennet that he should not have his horse, or that he must pay him his fees for posting, before he would surrender him. A demand and refusal were necessary to convict Robinsin of a conversion, unless he had done some act which, without a demand, could be construed into a conversion.
To maintain trover there must be, either a taking from the owner, without his consent an assumption of owner? ship over the thing, or an illegal use or abuse of it; or there must be proof of demand and refusal.
As there was no demand, one of three facts was necessary to make Robinson liable for a conversion of Jolly. 1st. A taking from Kennet without his consent. 2d. The assumption of Robinson of right to the horse. 3d. Illegal use or misuse of him, a mere non-feasance will seldom, if ever,support trover, unless there has been a demand or some illegal assumption. I. Chitty, 163-4.
-In this case, there is no “wrongful taking.” There was no illegal assumption of proprietorship, or control. Robinspn studiously disclaimed any right to Jolly. He was forced into his’ possession by Kennet. See II. Sanders, 47, e. f.; Str. 813; VIII. John 444; VI. Modern, 212.
Nor was there any illegal use or misuse of -the horse. As Robinson kept him, he had a right to use him as a careful man would use his own horse. If he had turned him loose and driven him off) (which would have been ungrateful to an old servant,) he might have starved. As he was put into his possession by Kennet, he had a right to keep him until Kennet should demand restitution. He had notified Kennet that he would not receive him on other terms. As he had to feed and take care of him, surely he had a right to some equivalent in service. He, therefore, sometimes rode and sometimes worked him, but always disclaiming any right to him, or a wish to keep him. There is no proof that Jolly was abused or used, immoderately, or that his value was diminished by the service which he performed. It is to be inferred from the evidence, that Robinson used him as he did his own horses. Under these circumstances this is no conversion. For doing this, which he had a right to do, Robinson ought not to be compelled to pay the value of Jolly. Kennet ought not thus to convert him into money, by a stratagem. If he had desired nothing but fair play and equal justice, he *87 would have demanded the horse and received him, if Robinson had been willing to surrender him. If he had wanted the horse, he would have made a mand. If Robinson had then refused to restore him, unless Kennet would pay the fees for posting, he would have made himself responsible for a conversion. For he had no right to post Jolly. He knew the owner, and that Jolly was no “stray?” But he has been guilty of no trespass. He has not detained the horse against the owner’s consent. He has not claimed or abused him. “A conversion seems to consist in any tortious act, by which the defendant deprives the plaintiff of his goods, either wholly or for a time,” III. Starkie, 1492. This deprivation must be without the owner’s consent.. “This proof (of a demand) is always necessary where the goods came lawfully into the defendant’s possession, as by finding or upon bailment, or delivery of the owner.” Ib. 1497; IX. Johnson, 361.
If the owner of a horse force him into the posses^, sion or en- / closure of his ¡ neighbour, who feeds and takes care of him, b« may, as an equivalent for' his food and care, use him moderately, nor can the owner maintain trover without a previous demand, and re--fusal to deliver him.
Lord Ellenborough says that, “if the thing for which the action was brought, was taken to do a work of charity, or to do a kindness to the party who.owned it, and without any intention of injury to it or of con* verting it to his own use, if, under these circumstances, any misfortune happen to the thing, it could not be deemed an illegal conversion; but as it would be a justification in an action of trespass, it would be a good answer to an action of trover.”
Here the thing was not taken or injured. There was no intention to convert it. The motive for keeping it, was charity to Jolly; and the effect, was kindness to Kennet.
What injury has Robinson done to Kennet? He was under no obligation to take the horse back. Thereis no proof of fraud. He has not only not injured the horse, but saved him from injury. He never refused to give him up. Kennet would not take him. He was a derelict. Robinson fed him, and used him because he fed him. As no illegal use was made of the horse; as there was no demand and refusal, there has, in our opinion, been no conversion.
Petition for a re-hearing
Mills and Brown, for plaintiff*
it will be time enough for Kennet to bring trover* wheh he shall have demanded the horse, and have failed to get him.
Judgment affirmed.